(52 South. 173.)

No. 17,811.

CARRICK v. JOACHIM.

(April 11, 1910.)

*(Syllabus by the Court.)*

ASSAULT AND BATTERY (§ 19*)—CIVIL ACTION —COMPENSATION.

Where one man (and he much the heavier of the two), without provocation, assaults another upon the street, and, in a voice which is heard half a square away, applies to him, the vilest epithets in the English language, the injured party ought not to be denied such compensation for the wrong done him as money can afford.

[Ed. Note.—For other cases, see Assault and Battery, Dec. Dig. § 19.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Alexander J. Carrick against Jacob Joachim. Judgment for defendant, and plaintiff appeals. Reversed, and judgment rendered.

Arthur J. Peters, for appellant. Meyer S. Dreifus, for appellee.

MONROE, J. Plaintiff demands damages for injuries alleged to have been sustained by reason of the fact that defendant, on the morning of September 13, 1908, repeatedly applied to him vile epithets and struck him, all on the public street and in the presence of third persons.

Defendant pleaded the general denial, and added a reconventional demand, which latter has since been abandoned. The suit was dismissed by the trial judge, and plaintiff has appealed.

The case, disclosed by the testimony in the record, is as follows: Defendant is about 45 years old and weighs over 200 pounds; he is, or was engaged in the business of putting up electrical fixtures; and, having married plaintiff's sister, took plaintiff into his shop and kept him, off and on for some 12 or 13 years, until he was about 24 years of age. During that period he sold plaintiff a house, and, for the price, plaintiff gave a note which was to mature on September 15, 1908; but there was a verbal agreement between them that plaintiff was to pay it in installments of $3 a week, and those payments were made at defendant's shop, so long as plaintiff worked there. Plaintiff, however, left defendant's employ about April, 1908, after which the payments were made, generally, at defendant's house, every Sunday. On Sunday, September 6, 1908, he failed to make the payment due that day, and on Sunday September 13th, he called with $6 to make both payments. Defendant happened, at the moment (say, between 9:30 o'clock and 11:30 o'clock, in the morning), to be standing at the corner, nearby, talking to a friend, who called his attention to the fact that plaintiff was at his gate. He walked to the gate, and plaintiff handed him the $6 folded in a receipt which was prepared for his signature. According to his own testimony (which, in that respect, does not materially differ from that of plaintiff), he said to plaintiff:

"It is a fine name you have made for yourself; your note was due on the 15th, and I want you to take it up."

Plaintiff replied:

"That was not the agreement you made with me, verbally."

Defendant, by way of rejoinder, said:

"That is the agreement, now."

Or (as he testifies):

"Agreement or no agreement, I don't want to have a d—— thing to do with you any more; I am done with you forever"

—which was followed by a vile epithet, and a blow, from the force of which, or in the effort to escape which, plaintiff stumbled and fell, and in attempting to recover himself was struck again, and defendant then made towards him with a piece of a shrub or young tree, which plaintiff had broken in falling, and plaintiff went to the other side of the street and got out of his way. A little later plaintiff returned to get his receipt, which defendant gave him, and plaintiff then walked off, but, as it appears, turned his head and looked back, when defendant, again, as he had several times before, applied vile epithets to him, and told him not to look back. Defendant's version of the matter is that, when he told plaintiff that he wanted him to pay his note on the 15th, whether it had been previously so agreed or not, plaintiff struck at and applied an epithet to him, and that it was then that he struck him—admitting that he struck plaintiff twice—and that he once used an epithet attributed to him. His version is overborne by the testimony of four witnesses who saw him striking plaintiff, and heard him repeatedly using language towards plaintiff which is not generally heard in polite society, but which, on that occasion, was heard by witnesses who were as much as 175 feet distant. Several witnesses were introduced on behalf of defendant, who testified to some things that had happened while plaintiff was in defendant's employ—going back as much as three years. Other witnesses testified that plaintiff had said things about defendant which they had repeated to him; but as defendant himself does not attempt to justify his assault and bad language by saying that those were the things which irritated him, and as plaintiff had been calling at his house and paying him $3 every Sunday for six months or more, the cause of his sudden outbreak remains unexplained.

In such cases, the injured party can choose between submitting to a wrong, resenting it by force and violence, resorting to a criminal prosecution, or, as plaintiff has done, appealing to a civil court for redress.

If, in pursuing such course, he should obtain no redress, he might very well conclude that the law expects him to redress his own grievances in his own way. Whilst, therefore, we agree with our learned Brother of the district court that, in the case of an ordinary street brawl, in which the parties are equally to blame, neither should be allowed to recover damages, we are decidedly of the opinion that, where, as in this case, one man (and he much the heavier of the two), without provocation, assaults another upon the street, and applies to him, in a tone that can be heard more than half a square away, the vilest epithets in the English language, the injured party ought not to be denied such compensation for the wrong done him as money can afford. Plaintiff is not shown to have suffered physically from the blows received by him, but he is entitled to damages for the indignity and for the slander, and we fix the amount at $300. It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed, and that there now be judgment in favor of plaintiff, Alexander J. Carrick, and against the defendant, Jacob Joachim, in the sum of $300, with legal interest thereon from the date at which this judgment shall become final until paid, together with all costs.

PROVOSTY, J., thinks the judgment should be for $500 at least.